UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| RYAN EDWARD NAGLE,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN RICHARD LITTLE and SRL LAW, PLLC,<br><br>Defendants. | Case No. 24-cv-2156 (LMP/JFD)<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Robert Frederick Caldecott, **Kelsey Law Office, P.A., Forest Lake, MN**, for Plaintiff.

Barry A. O'Neil and Nathan Zellmer Heffernan, **Lommen Abdo, P.A., Minneapolis, MN**; and Steven R. Little, **SRL Law, PLLC, St. Paul, MN**, for Defendants.

Plaintiff Ryan Edward Nagle brought this action against Defendants Steven Richard Little and SRL Law, PLLC (collectively, "Defendants"), alleging that Defendants made a false or misleading representation while collecting a debt in violation of the Fair Debt Collection Practices Act ("FDCPA").  ECF No. 1.  Both Defendants and Nagle move for summary judgment.  ECF Nos. 37, 47.  For the following reasons, Defendants' motion is granted, Nagle's motion is denied, and the complaint is dismissed with prejudice.

## FACTUAL BACKGROUND

In early 2024, Nagle participated in an arbitration against his ex-wife, seeking to resolve certain post-decree issues in their marriage dissolution.  *See* ECF No. 50-6.  Defendants represented Nagle's ex-wife.  ECF No. 42-1 at 10:4–9.  In February 2024, the arbitrator ordered Nagle to pay his ex-wife $40,303.  *See* ECF No. 50-6 at 3–4.  On

April 16, 2024, Nagle filed a motion in Minnesota state court, requesting to vacate the arbitration order and seeking a new trial. ECF No. 51 ¶ 5.

In May 2024, Defendants, representing Nagle's ex-wife, served Nagle's bank with a garnishment summons seeking to garnish Nagle's bank account.[1] ECF No. 50-3 at 3. The summons stated that a judgment in the amount of $37,207 was entered against Nagle and in favor of Nagle's ex-wife on February 6, 2024, by Minnesota state court referee Naomi S. Garfinkel. ECF No. 49 at 3. At that time, only an order by the arbitrator had been entered against Nagle.

Nagle then brought this suit, alleging that the statement in the garnishment summons that a judgment had been entered against Nagle by a Minnesota state court referee was false or misleading. ECF No. 1 ¶ 12. Nagle alleges that Defendants' conduct violated the FDCPA, which prohibits the "false representation" of the "legal status of a debt" and the "use of any false representation or deceptive means to collect or attempt to collect any debt." *Id.* ¶¶ 12–13 (citing 15 U.S.C. § 1692e(2)(A), (10)). Nagle also alleges that the garnishment summons lacked the notice required by 15 U.S.C. § 1692e(11). *Id.* ¶ 17.

Defendants now move for summary judgment, arguing that they do not qualify as "debt collectors" under the FDCPA. ECF Nos. 37, 39. Nagle also moves for summary judgment, asserting that Defendants are "debt collectors" under the FDCPA, and that their liability under the FDCPA is undisputed. ECF Nos. 47, 49.

---

[1] The parties did not submit a copy of this communication for the summary-judgment record, so the Court cannot assess whether Nagle's description of the communication is accurate. Nonetheless, Defendants have not contradicted Nagle's description, so the Court assumes it to be true for purposes of deciding the motions.

2

## ANALYSIS

Summary judgment is proper only if "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Riedl v. Gen. Am. Life Ins.*, 248 F.3d 753, 756 (8th Cir. 2001) (citation omitted) (internal quotation marks omitted). At this procedural juncture, this Court does "not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (citation omitted) (internal quotation marks omitted). Additionally, the Court must view the facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

This case ultimately starts and stops at a threshold question: whether Defendants qualify as "debt collectors" under the FDCPA. Because the answer to that question is "no," summary judgment for Defendants is appropriate.

**I.  Whether Defendants Qualify as Debt Collectors**

The FDCPA imposes civil liability only on a "debt collector," 15 U.S.C. § 1692k(a), defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," *id.* § 1692a(6). If a defendant "is not a debt collector for purposes of the FDCPA, the statute does not apply," and an award of summary judgment to the defendant is appropriate. *Volden v. Innovative Fin. Sys., Inc.*, 440 F.3d 947, 950 (8th Cir. 2006).

3

As the statute's text suggests, the FDCPA establishes two alternative tests for considering whether a defendant is a debt collector: (1) the "principal purpose" test, which applies if the defendant "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts"; and (2) the "regularly collects" test, which applies if the defendant "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* (quoting 15 U.S.C. § 1692a(6)).

### a. Principal Purpose Test

Nagle first argues that Defendants qualify as "debt collectors" under the "principal purpose" test. ECF No. 49 at 7. The "principal purpose" test encompasses an "entity that has the collection of any debts as its most important aim." *Reygadas v. DNF Assocs., LLC*, 982 F.3d 1119, 1125 (8th Cir. 2020) (citation omitted) (internal quotation marks omitted). This test therefore requires an evaluation of the proportion and volume of debt-collection work undertaken by the defendant. *See Alexander v. Omega Mgmt., Inc.*, 67 F. Supp. 2d 1052, 1055 (D. Minn. 1999); *Lynch v. Custom Welding & Repair, Inc.*, 142 F. Supp. 3d 814, 820 (N.D. Iowa 2015).

Defendants provide evidence that they are primarily engaged in general civil litigation, mostly in real estate and construction law, with some work also done in family law and general civil litigation. ECF No. 41 ¶ 4. Defendants state that "debt collection is not a part of [their] practice." *Id.* Nagle responds by citing three cases filed by Defendants over the past three years in Minnesota state court that sought pre-judgment garnishment. *See* ECF No. 50-2. Even assuming those cases represent consumer debt cases—a point

4

disputed by Defendants—taking one consumer debt-collection case per year does not permit a reasonable inference that Defendants' civil litigation practice has the collection of debts as its "*raison d'être*" or "most important aim." *Reygadas*, 982 F.3d at 1125 (citation omitted); *see also James v. Wadas*, 724 F.3d 1312, 1318–19 (10th Cir. 2013) (holding that an attorney who took six to eight debt-collection matters over a decade was not a debt collector because such collection action was "minimal"); *Glover v. Morrey Legal Grp., LLC*, No. 1:08-cv-2728-GET-JFK, 2009 WL 10712141, at *4 (N.D. Ga. July 21, 2009) (holding that law firm's eight debt-collection lawsuits and fifty-one debt verification letters over a two-and-a-half year period was a "relatively small amount of debt collection work" under the "principal purpose" test). Nagle, therefore, may not premise Defendants' FDCPA liability on the "principal purpose" test.

  b.  **Regularly Collects Test**

Under the "regularly collects" test, an attorney and his law firm may qualify as debt collectors under the FDCPA if they "'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995). However, neither the Supreme Court nor the Eighth Circuit have specified exactly how to evaluate when an attorney and his law firm cross the line into "regularly" engaging in consumer-debt-collection activity. *See Kowouto v. Jellum L., P.A.*, 750 F. Supp. 3d 973, 979 (D. Minn. 2024).

Nonetheless, courts in this District and within the Eighth Circuit have coalesced around a multi-factor test articulated by the Second Circuit in *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56 (2d Cir. 2004). *See, e.g.*, *Kowouto*, 750

F. Supp. 3d at 979–80; *Crandall v. Miller & Stevens, P.A.*, No. 20-cv-1793 (ECT/LIB), 2021 WL 4595535, at *4 (D. Minn. Oct. 6, 2021) (discussing the broad acceptance of the *Goldstein* factors); *Sommers v. Myers*, No. 5:23-cv-06128-RK, 2024 WL 4030692, at *4 (W.D. Mo. Sept. 3, 2024) (same); *Lynch*, 142 F. Supp. 3d at 821 (same); *Dubeck v. Marion L. Offs.*, No. 8:20-cv-149, 2021 WL 4355580, at *3 (D. Neb. Sept. 24, 2021) (citing and applying the *Goldstein* factors). The parties frame their analyses using the *Goldstein* factors, ECF No. 39 at 6–8; ECF No. 49 at 9, and considering the broad acceptance of the *Goldstein* factors in this Circuit, the Court will do so, as well.

In evaluating whether Defendants qualify as "debt collectors" under the "regularly collects" test, the Court considers the following factors:

(1) The absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s);

(2) The frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable;

(3) Whether the entity has personnel specifically assigned to work on debt collection activity;

(4) Whether the entity has systems or contractors in place to facilitate such activity; and

(5) Whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.

*Goldstein*, 374 F.3d at 62–63 (cleaned up). Here, none of the *Goldstein* factors weigh in favor of recognizing Defendants as debt collectors.

6

*First*, assuming that the three cases of Defendants cited by Nagle constitute consumer debt-collection activities, *see* ECF No. 50-2, that negligible number of collection-related litigation matters over a three-year period represents only "isolated or incidental" debt-collection activity. *Crandall*, 2021 WL 4595535, at *4 (citation omitted); *see Dubeck*, 2021 WL 4355580, at *3 (eight debt-collection cases over a 10-year period did not satisfy the "regularly collects" test); *Camara v. Fleury*, 285 F. Supp. 2d 90, 94 (D. Mass. 2003) (69 debt-collection cases which represented 4.57% of the work of a firm concentrating in "civil litigation, domestic relations and bankruptcy law (representing almost exclusively debtors)" did not satisfy the "regularly collects" test). Indeed, taking one debt-collection case per year falls far short of the activity expected of an attorney who "regularly collects" consumer debts. *See Goldstein*, 374 F.3d at 63 (genuine dispute as to the regularity of an attorney's collection work when he issued 145 debt-collection letters within a 12-month period); *Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir. 1997) (attorney regularly collected consumer debts when he had sent 639 demand letters during a nine-month period); *Blakemore v. Pekay*, 895 F. Supp. 972, 977 n.2 (N.D. Ill. 1995) (attorney regularly collected consumer debts when he had filed over 1,200 collection actions in the last year and had been elected to the state Creditors Bar Association). This first factor weighs in Defendants' favor.

*Second*, Nagle fails to demonstrate that Defendants have engaged in consumer debt-collection activity with any regular frequency. Nagle points only to two lawsuits filed in 2022 and another lawsuit filed in 2024, all on behalf of different parties. *See* ECF No. 50-2. There appears to be no rhyme or reason, nor any discernable pattern, to

7

Defendants' sporadic debt-collection activity. "Far from being engaged in consistent, customary, or constant debt collection, the facts show that [Defendants] only occasionally engage in debt-collection activity." *Dubeck*, 2021 WL 4355580, at *3. This factor therefore weighs in Defendants' favor.

*Third*, Defendants offer evidence that they have no personnel specifically assigned to work on debt-collection activity. ECF No. 41 ¶¶ 4–5. Nagle responds that because Little is a solo practitioner, he is necessarily assigned to do "all of the legal operations of debt collection activities for the firm." ECF No. 49 at 10. But "the mere fact that [Little] billed a relatively small amount of time to debt-collection matters does not reasonably justify the inference that the firm designated [Little] specifically to work on debt-collection matters." *Crandall*, 2021 WL 4595535, at *7. Put differently, this factor is not concerned with whether Defendants have engaged in some debt-collection work, but rather whether specific employees have been "dedicated to debt collection." *Dubeck*, 2021 WL 4355580, at *3. Defendants offer evidence that neither Little nor his law clerk are specifically dedicated to debt-collection work, ECF No. 41 ¶¶ 4–5, evidence which Nagle does not counter. This factor thus weighs in Defendants' favor.

*Fourth*, Defendants offer evidence that they have no systems or contractors in place to facilitate debt-collection activity. ECF No. 41 ¶ 6. Nagle offers no evidence to dispute that evidence, ECF No. 49 at 10, so this factor weighs in Defendants' favor.

*Fifth*, although Nagle arguably identifies a few instances of Defendants' debt-collection activity in the past, ECF No. 49 at 9, Nagle has not shown that such activity was "undertaken in connection with *ongoing* client relationships . . . to assist in the collection

8

of outstanding consumer debt obligations." *Goldstein*, 374 F.3d at 63 (emphasis added). Nagle provides no evidence that Defendants maintain ongoing client relationships for the purpose of assisting in consumer debt collection; rather, all the client relationships that Nagle identifies were "occasional, short-lived, and not in any sense ongoing." *Crandall*, 2021 WL 4595535, at *8. Because there is no evidence that Defendants have "an ongoing relationship with any debt collection entity," this factor weighs in Defendants' favor. *Lynch*, 142 F. Supp. 3d at 822.

Contrary to Nagle's suggestion, this case is poles apart from *Kowouto*. In *Kowouto*, the court held that there was a genuine dispute of material fact as to whether a law firm qualified as a "debt collector" under the FDCPA. 750 F. Supp. 3d at 982. However, the law firm had engaged in "hundreds" of eviction lawsuits[2] over a five-year period for a single client, had dedicated an attorney and paralegal to work on eviction cases, and had a "specific policy in place to facilitate the handling of eviction actions." *Id.* at 980–81. Here, in stark contrast, Defendants have engaged in, at most, four debt-collection actions (the three cases cited by Nagle, plus the garnishment against Nagle), Defendants have no policy or personnel dedicated to debt-collection activities, and Defendants have no routine or ongoing relationship with debt-collection entities.

In sum, none of the *Goldstein* factors indicate that Defendants "regularly collect[]" consumer debts, and Nagle has identified no other facts that "bear on the question of

---

[2] The *Kowouto* court concluded that eviction proceedings constituted debt-collection activities under the FDCPA. *See* 750 F. Supp. 3d at 980 n.2.

9

regularity of debt collection activity."[3]  *Goldstein*, 374 F.3d at 63.  Because there is no genuine dispute of material fact that Defendants are not "debt collectors" under the FDCPA, summary judgment for Defendants is appropriate.  *See Volden*, 440 F.3d at 950.

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment (ECF No. 37) is **GRANTED**.

2. Nagle's Motion for Summary Judgment (ECF No. 47) is **DENIED**.

3. The complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 11, 2025                                  *s/Laura M. Provinzino*
                                                                         Laura M. Provinzino
                                                                         United States District Judge

---

[3] Nagle suggested for the first time at oral argument that Defendants' purported bad faith in issuing the garnishment summons weighs in favor of finding that Defendants were debt collectors. Nagle suggested this could be an additional factor for the Court to consider under an expansive reading of *Goldstein*, which set forth five non-exhaustive factors. *See* 374 F.3d at 62–63. Nagle could not, however, identify any authority holding that the presence of bad faith is relevant to determining whether an entity "regularly collects" consumer debt. The Court declines Nagle's invitation to find so here.